Hear ye, hear ye, hear ye, His Honorable Public Court of the 2nd District is now open. Pursuant to adjournment, the Honorable Robert D. McLaren of Iowa. Please be seated. Your Honor's final call for today's case is call 210-1117 CBS Outdoor v. Village of Itasca and the Wayne Hunter Trust Company. On behalf of the Avalon, Mr. Robert Weber. On behalf of the Athletes, Mr. Charles Purvis. Mr. Weber. Good afternoon. Good afternoon. May it please the court, counsel. CBS Outdoor maintains a 14 by 48 billboard on property owned by the defendant Land Trust. The billboard has been there pursuant to permits issued by the village and the state since 1983. Recently, the village, in response to an application by a new landowner, conditioned the grant of a special use permit for the property upon what I'm calling the removal provisions. The village has required that the landowner not renew the existing billboard lease, that it refuse to permit a billboard from being placed on the property again, that it cause removal of the existing billboard by July 30th or 31st, being the 30th day after the termination of the existing lease, and it imposed monetary sanctions. On the property owner, if the billboard was not removed. All of this was done and had been repeatedly done since 1983 without knowledge of the billboard company. They were not present at the zoning hearing. They had no knowledge of these provisions in the zoning ordinances. They received no notice, you're saying? That's correct. The essential and differentiating fact in this case from many of the others that I've seen is the village's coercion of the trust and ultimately of CBS without CBS's actual knowledge. If they had received notice, what would they have done? If CBS had received notice, they probably would have attended the zoning hearings and tried to convince the village that what they were doing was illegal because of the fact that the billboard was a legal nonconforming use and protected by state statute and protected by village ordinance, and they could have negotiated. And if the negotiations failed, they could have considered litigation immediately. As it turned out, we had no notice. Even, as I'll get into it later, the application of Section 11-13-15 by the trial court, which said we had to file within 90 days, we had no notice within the 90 days the statute ran. Now, does your position also go beyond that? Is it your position, as I understand it from the briefs, that you're not contesting the 90-day period ran? You seem to be saying, well, the actions of the village were ostensibly or were, in fact, illegal. They're unconstitutional. Therefore, we shouldn't be subject to the limitations in the section. Is that your position? Exactly. That's exactly our position. All right. Here's my question, though. What case law do you have to support that there's a difference between seeking review of the propriety or wisdom of an application versus a violation ostensibly of constitutional law? What case law supports that interpretation? This is a case of first impression, as far as I'm concerned, with regard to 11-13-25. Okay. So there are nothing right on the point. Okay. So you've got to read Claren to find out why Claren, the rationale behind Claren, which is a due process rationale that the people were not afforded due process, they were not allowed to participate in a combined village board plan commission and, I think, ZBA meeting. So they said, the court said that you have to afford a due process. Well, let me ask you this. And, again, as you know, I'm sure you're familiar with the rules of statutory construction. We give the words ordinary and plain meaning. The section provides any, quote-unquote, action seeking the judicial review of a decision of a municipality regarding any petition or application for special use. So wouldn't any extensively include all reviews, whether it's based on constitutional grounds or simply challenging the correctness? We've all heard the phrase or the saying that the end does not justify the means. There is an end and there is a means. The end of this process of using the words of the statute, the corporate authorities, any decision by the corporate authorities regarding any petition or application, there was no application to condition the removal or the remainder of the sign on this property. The petition was to allow the property owner to use the property for a use that it had been used for historically. So the petition dealt with the land use by the property owner. And so I'm saying that it was outside the petition. Also, if you look at the case that I cited in the brief, Pasolino deals with a requirement that there be actual notice instead of constructive notice in certain situations. In re MT, which I think came out of this district, regarding statutory interpretation, the petition looked beyond the literal meaning of the statute in question to look at the intent. And the intent here was to take the burden off the municipalities and the city councils from having to hold a due process evidentiary hearing. As is the case if you had an administrative review of a zoning procedure where you have witnesses cross examination. To take the burden off the council and require a de novo hearing before the court. So what is the appropriate time limitation that should have been applied? Five years. Going back, the end was permitted land use. The means was these removal provisions, which are a violation of the law. Why are they a violation of the law? Number one, our billboard is a legal nonconforming use. It's protected by state statute. It's only protected so long as it exists. And it's still there. Or if you have a valid lease. The lease, in our opinion, is valid because the notice was withdrawn effectively by the owner by an oral. That's the point. That's why we're here. It's our position that you have a valid lease. But your lease is only valid so long as the length of time for which the parties have agreed to it. You don't have the right to, once you get a lease for a year, claim that you have a right to a lease in perpetuity. We had a lease for 10 years with the right to, if it was not terminated, to remain there on a year-to-year basis. That's in the writing. They sent a notice of termination. There is nothing that binds them or prevents the landowner and us from orally agreeing the notice of termination is no longer valid and we get to remain there. And that's what happened here. And it raises a fact question. Well, what about the Addison Park District case? Doesn't that seem to fly in the face of your contention? No. Addison Park District, what's missing there is, number one, a private landowner being coerced by a municipality, which we have here. The landowner in the Addison Park District was the park district that was talking to the village of Addison regarding annexation. Here, that's not the case. In Addison Park District, there was no coercion. And they cite the DuPage Water, I think it's Patrick Media v. DuPage Water Commission, which I tried, and I'm pretty sure I handled the appeal also. In that case, Justice McNamara talked about actual coercion. If there was coercion in this case, what remedy does the landowner have? Decision? What remedy does he have with regard to what, Your Honor? Well, you said that he was coerced or it was coerced. Right. If it was coerced and it supposedly got concessions from the village and it wants to rescind the agreement that it was coerced into doing or executing, does that not mean that everybody is supposed to be put in the original position they were previous to the coerced agreement? Well Which means that the special use, the variation, all the benefits that they were granted under the ordinance are now abrogated? Right. And you start all over again and then they get to go and file a declaratory judgment suit in circuit court and claim that they've been manhandled or coerced or injured in some way, shape, or form? There is. His remedy is to file a lawsuit, if you can't talk your way out of it, to file a lawsuit. There is a severability provision in the ordinance which says that if one part of the enactment is found illegal that the others would remain. Again, that's a fact situation that we didn't get to. Did the trust file suit? No, they did not. The trust has agreed with us that we would file this suit and we would maintain the suit and we would challenge the village. The trust is in a very difficult position. They're in the village. They've got to work with them every day. We aren't. How do you have standing under the eminent domain?  We are saying that if the removal provisions are allowed, are found to be valid, that then the eminent domain act comes into play, which says that a billboard owner and the property owner have a right to just compensation if the billboard is required to be removed or altered. And in this case, we're assuming we have this agreement between the trust and ourselves that we get to remain there, which is our agreement and which will come out in discovery if we're allowed to get there. And we are then required to either remove the sign or to alter it. State law says we're entitled to just compensation. The village has to pay for it. The village here in 2008 passed an ordinance banning all outdoor. Well, why can't they do that? They can. But that makes the existing outdoor legal nonconforming uses. And a legal nonconforming use has certain rights to remain. Well, it does, unless it's negotiated away. I mean, I suppose, to use the phrase, coercion in this case could be in the eyes of the beholder. What somebody might believe is coercion, somebody else might say that's negotiation. Trust didn't have to do what they did. Municipalities didn't have to do what they did. They entered into an agreement. The trust had picked out a piece of property that they were going to use in their business. They liked the property. There was nothing wrong with it. It was perfect for their business. The village comes along and adds this other provision in there that takes the income away from them from the signed company. What's the trust to do? They're put in a jackpot. They have to make a decision. Do we give up this good piece of property or do we give in to the village? And yet they took no action against the village, a rescission or anything else? No, because the village, they were afraid. Reasonably afraid. They want to be in business. They don't want to be litigated. We have an existing structure there, and we have, and this could go on in other municipalities if this is allowed to continue, if this practice is allowed to continue. We have signs all over the place. And so it is of concern to us. We were willing to undertake the litigation and test the legality of the village's actions. If it's determined that there was coercion, how did that inure to your benefit? How did the coercion inure to our benefit? It didn't, because it put pressure on our landlord to throw us off the property. What I mean is, how does the coercion result in your standing to make a complaint about the damages that you might have received, which, according to your argument, seems to be that if you executed a lease with the trust of 100 years, then you should be given damages to the tune of whatever a lease for 100 years would be worth. If you executed a lease that was for 10 years or 5 years or 15 years, then your damages would be whatever the value of that lease would be. Is that logical or is that reasonable? What kind of relief are you seeking based upon the fact that the landowner was coerced into terminating the lease? I shouldn't say terminating the lease. I should say failing or refusing to not renew it. First of all, we're not asking for money damages. We are asking to remain there because our goal is to advertise and to sell space on our structure. We want the removal provisions to be declared illegal, invalid, and therefore no longer applicable. The agreement, I thought, said that either the lease is going to be terminated or that the landowner is going to pay 90% of whatever the lease agreement is, if there's a lease, or what was it, $2,200 or $2,700 a month? Yes. So what standing do you have to declare a right in the landowner to either alleviate the need for payment of a penalty based upon the agreement that the landowner made? We have standing under Greer. Under Greer, we have an actual or threatened harm, injury to us, the removal of our sign, the loss of the right to remain on that property. It's distinct and palpable to us. It's fairly traceable to the village's actions, and it's substantially likely to be prevented or redressed by a declaration that the removal provisions are invalid. And assuming that you're allowed to stay there. Which the landlord is permitting us to do. The agreement provides that the landlord pay a penalty if you stay there, and you're not seeking relief for alleviation or abrogation or termination of that penalty. Yes. When we say that the removal provisions are to be held invalid, the penalty falls. That's part of the removal provisions. We want to pay the landlord rent. We want the landlord is entitled to rent based on our being on their property, and the removal provision is taking the rent away from the landlord or else requiring us to pay double rent. And you want us to abrogate a portion of the agreement between the landlord and the city or the municipal corporation. We want to hold it invalid as being a violation of the law, violation of due process, and violation of equal protection. Again, I have not talked about this. It's in the brief. We are a legal nonconforming use. No other legal nonconforming use in the village of Itasca is being forced out by virtue of an agreement with a landlord. And what significance is that? It's the denial of equal protection. We are being singled out and treated differently for no public purpose. The sign is legal. I might buy your argument if there were other people that went to the city and said that we want to negotiate a variation or some special benefits. And in that situation, there was a billboard on the property. The billboard was a nonconforming use. But for some reason, the municipal corporation did not require a termination of the lease or a non-re-execution or renewal of the lease when it came to be renewed. But we have pledged that there is no such situation. I remind him, Your Honor, that we're here. Then how can there be a violation of equal protection if there isn't an instance establishing unequal treatment? Because I believe there's a doctrine. I forgot the exact name of it. You could have an instance of one. The doctrine of possibilities? Of one. No. One can be a denial of equal protection. And that's what we have here. And actually, that's the basis for Judge Gottschalk's retaining the equal protection claim in federal court. The village argued there that we did not show that there were other instances where people were allowed to remain. And the doctrine is if there's a case of one, and we have pledged that there are no other instances, that that's sufficient. Brad, did the time go up? Any other questions? I heard them. Thank you. Thank you. Good afternoon. May it please the Court. My name is Charles Hervis. I represent the village of Itasca. I want to make sure that I'm clear that I do not represent the trust, even though they are co-defendant in this case. How can they be co-defendants when supposedly they're agreeing to this litigation insofar as having the plaintiff sue you and abrogate a portion of the agreement, et cetera? I don't quite understand the alignment. Can you explain it to me, if possible? I can't speak for them, but I can only presume that they've changed their mind about the deal that they made. They would like to see this court give the relief that CBS Outdoor is asking for. The economy has changed, so an extra few thousand dollars every month is beneficial to them. Now, when you say you can only assume, this is something going on behind the scenes. There's no pleadings? No pleadings. No court delegation? None. I'm going to make two observations for the Court and then make two points. The first observation is that this case has much more to do with the decisions that were made by the trust than the actions of the Village of Itasca. The trust had a lease with CBS Outdoor. The trust wanted zoning relief. The village wanted the billboard to come down. The village told the trust, you know, we will grant you the zoning relief if you agree to let the lease expire and bring the billboard down. The trust had a decision it needed to make, and it decided that it would rather forego the right of the billboard and get their zoning relief and move on with their business. CBS Outdoor, not pleased with the decision, now wants to assert the claims that the trust abandoned, and they want to make this court deal with the village in a way that the trust had already agreed it was foregoing. The lease had terminated, correct? The lease had, the ten years of the lease had concluded, and what CBS is obviously arguing is that they had the right to seek for a renewal, but the deal was that the trust would agree that it would, once it was terminated, it would be over. So it initially expired as of its own terms. That's correct. So there was no taking of any property then, was there? That's correct. That's our position. My second observation, and it's particularly important, I didn't realize that it was going to come up in the argument, and that is the issue of coercion. There is no allegation of coercion in the complaint. What CBS Outdoor has done was they've made the suggestion in their initial brief, and then realizing after the village filed this brief, they really need coercion here. I'm not sure exactly why, but that's how they feel. So the reply brief is replete with coercion. This is a fact pleading state. Take a look at the complaint, and you will find no allegation of coercion. Since this is before the court on a motion to dismiss, the complaint stands as is, and I believe that it would be inappropriate for the plaintiff to assert and for this court to find that there was coercion. So take it that when he's arguing that constitutes coercion, you would probably argue it was the product of negotiation. Absolutely. That's absolutely what we believe happened. What other alternatives were open to the trust had it decided that it wanted to keep the lease? That the trust could have told the village, we will not agree to the removal provision. We want our zoning, and we're going to move forward with the application. And then the village is faced with a choice to either grant or deny the application, and if they were to deny it, the trust would seek legal relief, and if they were to grant it, then they got what they wanted, and they got to keep the billboard. But instead, they made a deal with the village. So, yes, there was an option for the trust in this manner. What is the real world term? What he seems to be saying is he's inviting us to say, look, you're making technical legal arguments, but there's a potential for abuse here in the real world. You've got a village who, whatever, doesn't like the other side, doesn't like this billboard, they've changed their mind. So they lean on, if you will, as opposed to, of course, the trust on the landowner to do away with renewing the lease. Is there a potential for abuse? And if so, what is the innocent billboard company owner to do? Well, I don't believe, okay, potential for abuse, sure, there's a potential, okay? I'm not going to deny that. But I think that the word abuse in this particular circumstance is the wrong word, because the village made it clear that they want the billboard to come down. They've made that clear since 1983. So that's not a secret. The village has their own reasons, and we've placed this in the brief. Aesthetics and safety with respect to traffic is what the village asserts as a reason to have advertising signs that are not on premises to come down. Be it good or bad, those are the reasons. They asked the trust if they would agree to have the lease expire. The trust says yes. I don't really find that abusive. There aren't any facts here that suggest that the village is somehow abusing the property owner here. In the end, if the trust says, well, we really want the sign, and we think we're entitled to the zoning relief even if we keep the sign, the worst thing that happens is the village says no, and then there's a litigation issue. So abuse, if abuse means that they might have to go to court, which I don't think that's really what abuse is, I think it's an arm's length transaction. Talk about the limitations period. The 90-day limitations period obviously is a new creation of the legislature in the last couple of years. And I would respectfully suggest to this court that statutory provision fits precisely into this particular matter. CBS Outdoor is suggesting that they're making a facial attack, which is really something that you would make against a zoning code. For instance, we're banning all sorts of different types of particular use, and that's not fair. So they file a facial attack. So you're saying a void statute can be attacked at any time. Sure. Except this becomes an issue of de-application, not avoidance of statute. Absolutely, because what this is is not an attack on the zoning code. Maybe they would want to attack the idea that the village doesn't like off-premises advertising signs. That would be a facial attack. In this instance, it was simply the special use that a particular property owner wanted for their property. And so if the objection is to that ordinance, which is what this ordinance does, which is an interpretation of the zoning code, you don't have a facial attack on a zoning ordinance in that fashion. It doesn't exist. It's the application of the code that you would have a facial attack on. So the idea that the 90-day provision would apply to a particular zoning decision of the municipality is exactly what the code section talks about. Is he accurate in his position that there are no LMI cases precisely on point, though, attacking, you know, when you can raise an appeal, an issue of attacking the validity or the constitutionality of the action? Is there a case right on point? I cannot think of one in the last three years since 2009 when the statute was amended. But I would assert to the court that it's very clear on its face from the wording of the statute. The suggestion of a five-year catch-all limitation, I think, is not appropriate. I think it's the 90-day statute. I do want to mention briefly that they argue they had no notice. If you look at the pleadings carefully, you'll see that they themselves allege that after the property was purchased and the zoning was obtained, which, by the way, was on the same day, CBS received notice of non-renewal from the trust. They knew before the 90 days were up that they were not going to get renewed, and their complaint says that they negotiated in an attempt to try to convince CBS that they should renew the lease. But they didn't get notice from ITAS. They did not get notice from ITAS of the proceeding. Do you submit they weren't a party? There was no entitlement to notice in this matter statutorily, and I would suggest that there's the general municipal law adage that an ordinance published is that notice is received through the mere publication of an ordinance. That's pretty much hornbook law. Obviously, I'm not going to suggest that we gave notice to CBS Outdoor of this particular action. You didn't. We did not. But you gave notice to the trust. Oh, absolutely. Right. And so really, in a sense, it's the trust and the village that created a side deal that affected CBS Outdoor, and so there's no reason why the village would feel the need to provide notice. It really was the trust, and the trust did notify CBS Outdoor. Now, what is our standard of review? I'm sorry. What's our standard of review? Given that this is a motion to dismiss, it would be de novo. So that's my understanding of how that works. Who do you give notice to when there is a petition for a variation or a special use on file? Do you give it to all owners and occupiers of land within 150 feet of the property? Yes, the statute prescribes that notice. And why wouldn't the leaseholder of a part of that property as well as the prospective purchaser of the trust be given notice? Under the statute, it's not required. When you say under the statute, it's not required, what do you mean by that? It's not required to give it to lease owners? It's only required to give it to property owners? It's only required to give it to the property owners. That's correct. Leaseholders, and this is not even real property, no one lives there, and so it's not required under the statute. So it's only title holders, it's not owners and or occupiers? It's owners of record. So the idea there is that somebody that lives there or owns property within X number of feet of the zoning decision, so they have a chance to come and object. And when you say owners of record, are you talking about the grantor grantee index or something different? That would be, I'm thinking through the statute without, that would be my understanding of how municipal law operates, yes. My second argument obviously is going to be Lamar Advantage versus Addison Park District, which Justice McLaren has already referred to. That case was decided by the court in 2004, and I guess if you use the old law school term, it stands on all fours in my opinion. I won't give you, I had 25 years ago, I worked for a man by the name of Jim Sherratt, who appeared in the Seventh Circuit on an oral argument that I saw. And there was a case that was directly on point, and he was positive that it was dispositive of it. And he stood up and told the justices of the Seventh Circuit, my mom told me I said what I said, I mean what I mean. Mr. Sherratt said, I believe what you said in such and such case is dispositive. If there are no further questions, I'm going to go sit down, and he did. And I don't have the nerve to do that, but I will say that I do believe- Not too many people have the nerve, Jim Sherratt. But the Lamar Advantage case has such striking similarities that the distinction made by Mr. Weber that it didn't involve, that this case doesn't involve a governmental entity, it involves a private entity, which is the trust, I think is a distinction without a difference whatsoever. Because the Park District and Lamar Outdoor wanted to keep the sign. They negotiated to keep the sign. The Village of Addison said, you know what, if you want to come in, you're going to have to get rid of the sign, meaning come in through annexation. And the Park District decided that it was better to go into the Village of Addison than to maintain the revenue from the sign, so they let the term of the lease expire, and the court was abundantly clear that Lamar Advantage had no rights in an expired lease. The only thing that Lamar had, or that CBS has in this, is hope. Did Lamar get notice, though? I don't know the answer to that question. I'm not sure. And I don't recall, despite my careful reading of the case, I don't recall that. The court in Lamar did rely on the Patrick Media Group case that Mr. Weber noted in his argument that he tried, and the court in Lamar stated specifically that termination of a lease according to its terms is not a taking by eminent domain. And I think that Lamar was abundantly clear that there are simply no rights in an expired lease. In fact, to go to the practical end of things, the village, in making this agreement with the trust, was certainly aware of the Lamar decision. And as opposed to requiring the trust to have the sign come down immediately, realized that Lamar was the guide, the path, as to how to resolve this matter. And so all you had to do, based on Lamar, is cut a deal, if they were willing to do so, that just let the lease expire, have the billboard come down, and just in case the trust didn't really want the billboard to come down, you'd have a penalty provision in there to make sure that they had an incentive to keep the agreement. And that's what happened in this case. Lamar guided the village in this matter. It's a precedent that we believe controls this case, and we respectfully ask that you affirm the circuit court. Thank you. Thank you. Mr. Weber. With regard to the question about the 90 days, in the context of this case, where CBS is alleging violation of the statute with regard to legal nonconforming uses, with regard to conditional zoning, 90 days is almost ridiculous. As I said, we did not even know that the ordinance had been passed. True, we got a notice of termination, but we didn't get any. And if you read that notice of termination, it makes no mention of the amendment to the ordinance and the removal provisions. We got notice of termination from the land trust, and we began negotiations with the land trust. That's where the pleadings end. We did not get that notice of termination does not mention this ordinance and the removal provisions. I asked you about standing before counsel. How, again, how is it that you were required to receive notice? How did you have standing in order to receive notice? I believe the case is Pasolino, which I cite in the brief, that in certain instances where we have a structure in place that's of value, the lease was valid and in force at the time in 2007 when this ordinance was passed. It was in force until June 30th of 2008. We have standing because we are adversely affected by the actions of the village and at that time the trust. The trust has since changed its mind, and that would come out if we were to have discovery in the case we're allowed to go on. So if you're renting, if you're a tenant in somebody's building and you're renting the basement apartment and the village moves to condemn the property, you as the occupier of the lease and the basement are entitled to notice? Absolutely. In a condemnation, yes, a tenant has a right to just compensation, and they are required to get notice. And if they don't, they can file a cross petition and they'll get just compensation. There you go. Pardon me? No. You said adversely affected. Mr. Hervis called it an interest. And so I'd like you to enlighten us as to how being adversely affected is the equivalent of having an interest that would subject you to notice. We have a structure, a trade fixture on the premise. The trade fixture would be entitled to compensation were they to condemn. We have an interest by virtue of the Eminent Domain Act, which says that a billboard is entitled to, billboard owners entitled to just compensation if the village requires that it be altered or removed. But the village didn't require that, did they? No, they're avoiding, that's the point. That's what they're doing here. They're avoiding the state statute with regard to eminent domain that the billboard owner is entitled to just compensation by negotiating and conditioning their zoning approval. Avoidance is not the same thing as breach or violation. And being adversely affected, we are constantly, each and every one of us, adversely affected by things that happen around us every day. But that doesn't give us a legal interest that we have standing thereon to sue. They are violating our rights to maintain our property. They are violating our right to enter into negotiations with our landlord. They are violating, ultimately and alternatively, they're violating our right to just compensation for the forced removal of the sign. So let's take it, as I ask the question of the real world effect on you. So under your scenario, when could a village ever move to cause a sign to be taken down? Are you saying there that if the lease, if the owner wants to have you there in perpetuity, the village is powerless because otherwise they're going to be alleged to have violated your rights? No, no. The village, in some instances, the villages will pass a prohibitory ordinance or a downsizing ordinance, and they'll amortize it for a period of time. That's pretty common. Now, in some cases, the amortization isn't correct, but for the purpose to answer your question, amortization is a way of doing it, prohibiting it, and then if the sign were to be damaged by 50 percent, it's gone. There are ways of removing illegal nonconforming uses. But negotiating with the landowner isn't one of them, apparently. Not when you're doing it to just one. Where you have an ordinance on effects prohibiting billboards, and you have a state statute which protects legal nonconforming uses, and you have a state statute which requires just compensation to go around those and violate the billboard company's rights by negotiating with a landlord using the leverage of refusing to do your duty and letting him use his property, that's wrong. The council said that we did not plead that. I ask your honor to look at paragraphs 27 through 34 of the second amended complaint, which deal with coercion. Any other questions? I think I've dealt with everything. The point is, no actual notice to us. We are just denied the process. We ask that you reverse and remand and let this case proceed to discovery so the facts can come out. Thank you. Thank you. Court is adjourned.